**P.M. PALUMBO, et al., Appellants,**

v.

**DON–JOY CO., et al., Appellees.**

**Appeal No. 84–1691.**

United States Court of Appeals, Federal Circuit.

May 20, 1985.

---

Stanley C. Spooner, Stevens, Davis, Miller & Mosher, of Alexandria, Va., argued, for appellants; Donald E. Stout, Antonelli, Terry & Wands, of Washington, D.C., of counsel.

Welton B. Whann, of San Diego, Cal., argued, for appellees; Stephen P. Oggel, Christison, Martin & Oggel, of San Diego, Cal., of counsel.

Before DAVIS, KASHIWA and MILLER, Circuit Judges.

DAVIS, Circuit Judge.

P.M. Palumbo, et al. (Palumbo), the patentee and his company, seek review of a grant of summary judgment of non-infringement by the United States District Court for the Southern District of California. We reverse and remand.

## I.

## BACKGROUND

### A. *Palumbo's '744 patent*

Palumbo sued Don-Joy, et al. (Don-Joy) for infringement of U.S. Patent No. 4,296,-744 ('744 patent). That patent discloses a patellar brace useful for the diagnosis and treatment of patellar subluxation. Patellar subluxation is the undesirable movement or dislocation of the patella (kneecap). The invention purports to provide a dynamic patellar brace capable of bracing the kneecap throughout the full range of knee movement. Claims 1, 8, 9, 10 and 11 are the independent claims of the patent.

Claim 1 recites:

A dynamic patellar brace for preventing subluxation of a patella throughout the complete physiologic range of flexion and movement of the knee comprising:

*means for bracing* the patella;

*means for maintaining* said patellar bracing means positioned laterally of the patella throughout the complete physiologic range of flexion and movement of the knee when the brace is in use; and

*means for causing* said patellar bracing means positioned laterally of the patella to apply a resultant force in the medial direction to the patella throughout the complete range of flexion and movement of the knee when the brace is in use. (Emphasis added.)

Claim 8, which is representative of the remaining independent claims, states:

A dynamic patellar brace for preventing subluxation of a patella throughout the complete physiologic range of flexion and movement of the knee comprising;

*pad means* for placement laterally adjacent of the patella for laterally stablizing the patella throughout the physiologic range of flexion and movement of the knee;

*force developing means* connected to said pad means for applying a force thereto, said pad means coupled with said force developing means applying a resultant force in the medial direction to the patella throughout the complete physiologic range of flexion and movement of the knee when the brace is in use, said force developing means including first and second elastic bands wrapped in a first circumferential direction about the leg, one of said elastic bands wrapped above the knee and the other wrapped below the knee; and

*position maintaining means* connected to said pad means for maintaining the position of said pad relative to the patella throughout the physiologic range of flexion and movement of the knee and including a third elastic band wrapped about the leg in a second circumferential direction, said third elastic band intermediate said first and second elastic bands. (Emphasis added.)

The specific and only embodiment, described in the specification and drawings (see *infra*) and claimed in claims 2 through 7, discloses an elastic sleeve 20 consisting of an aperture 21 to align the kneecap; a patellar bracing pad 15 positioned adjacent to the aperture 21 between the upper portion 12 and lower portion 13 of the user's leg; two elastic medial (sideways) force-applying arms ("arms") 17, 18 attached to the bracing pad 15; and an elastic position maintaining arm 19 ("counterarm") also attached to the bracing pad 15.

The two force-applying arms 17, 18 wrap around the knee and apply pressure to the bracing pad 15 in order to continually apply a resultant force to the patella in a medial direction. The bracing pad 15, and thus the patella, is maintained in the proper position throughout the complete range of knee movement by the counterarm 19 which is circumferentially wrapped in the opposite direction from the two arms 17, 18. (The arms and counterarm are secured by Velcro strips, 22, 23, 25, 26 and 27.)

### B. Sketch of the prosecution history

Before the United States Patent and Trademark Office (PTO), all claims of the '744 patent were initially rejected as anticipated by, inter alia, the Detty patent (U.S. Patent No. 4,084,584). Detty discloses a single elastic sleeve consisting of an aperture for the patella and a pad adjacent to the aperture for restricting movement of the patella. Palumbo argued before the PTO that Detty and other prior art devic﹍

function merely as static restraining pads, ineffective in the dynamic mode (i.e., throughout the complete range of movement).

Following a further rejection made on a continuation application, Palumbo amended claim 1 by changing, inter alia, "patellar bracing pad" to "means for bracing the patella," "means adapted to maintain" to "means for maintaining," and "means adapted to cause" to "means for causing." In addition, "normal" was replaced by "complete physiologic" in describing the "range of flexion and movement of the knee over which the brace is effective." With these changes and after the examiner was convinced that the Palumbo brace would "track" (i.e., brace) the patella much more closely than the Detty device, the claims were allowed.

### C. The Don-Joy devices

Don-Joy's accused devices are referred to as the patellar stablizing unit (PSU)[1] and

---

1. Infringement by the PSU device is not now at issue before this court, see infra, Part I, D.

the multi-directional patellar stabilizer (MDPS). The Don-Joy device in question, the MDPS, comprises an inner sleeve with a patellar hole similar to the sleeves of both the Detty brace and the specific embodiment of the Palumbo invention. The MDPS also has a separate sleeve placed over the top of the inner sleeve and centered about the knee.[2]

### D. *Proceedings below*

Before the district court, Don-Joy asserted two grounds for summary judgment. As the first ground, Don-Joy argued that the '744 patent was invalid as anticipated by the Detty patent. From the bench, the district court orally ruled that anticipation of the '744 patent created an issue of fact inappropriate for summary judgment. As its second ground, Don-Joy asserted noninfringement of the former (PSU) Don-Joy device, and noninfringement of the present (MDPS) Don-Joy device. As to the former device (the PSU), the court found a material issue of fact, and therefore denied summary judgment.

With respect to the present Don-Joy device (the MDPS), the court, by order, granted summary judgment to Don-Joy and concluded as a matter of law that MDPS "does not infringe claims 2 through 12 of the patent in suit because those claims are limited so as to include two arms and a counterarm and the present Don-Joy device does not embody arms and a counterarm." The court further specified (under Rule 56(d) of the Federal Rules of Civil Procedure) that at trial certain matters shall be deemed established:

(a) The field to which the invention of the patent in suit applies is crowded.

(b) The advance of the patented invention over the prior art is small.

(c) The patent in suit is entitled to only a narrow range of equivalents.

(d) The language of claim 1 of the patent in suit, "means for bracing the

patella", is construed to mean the patellar bracing pad.

(e) The language of claims 8 and 9 "force developing means ... and other wrapped below the knee" is construed to mean two arms and "position maintaining means ... and second bands" is construed to mean a counterarm.

On the same day, the district court entered final judgment (under Rule 54 of the Federal Rules of Civil Procedure) that all the claims of the '744 patent were not infringed by the MDPS device. The court stated that the basis for the judgment was set forth in its prior oral findings and conclusions of law.[*] It is from this final judgment that Palumbo appeals.

## II.

## IMPROPRIETY OF THE SUMMARY JUDGMENT

The major issue before us is whether the district court properly granted summary judgment of noninfringement. In this instance, our inquiry centers on whether the court erred in holding that no genuine issue of material fact existed and/or whether the court erred in interpreting the claims of the '744 patent.

Summary judgment is appropriate in a patent infringement case when, for example, a properly interpreted claim with an uncontested description of the accused device reflects the absence of a genuine issue of material fact. *See D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573, 225 USPQ 236, 238 (Fed.Cir.1985). However, in deciding whether a genuine issue of material fact exists for summary judgment purposes, a court should look beyond bare arguments and "resolve all doubt over factual issues in favor of the party opposing summary judgment." *Litton Industrial Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163, 225 USPQ 34, 37 (Fed.Cir.1985); *see also Union Carbide*

---

**2.** Although there may have been an adequate illustration of the MDPS device before the district court, none suitable for reproduction was included in the record on appeal.

**\*** The oral findings and conclusions were set forth by Judge Keep on November 21, 1983, December

5, 1983, January 30, 1984, and May 29, 1984. The case was subsequently transferred to Judge Brewster who entered the order granting partial summary judgment and order of final judgment dated August 7, 1984.

Corp. v. American Can Co., 724 F.2d 1567, 1571, 220 USPQ 584, 588 (Fed.Cir. 1984). Even if a district court properly found that no genuine issue of material fact was raised, reversal is still required if the court "engaged in a faulty legal analysis in applying the law to the facts and a correct application of the law to those facts might bring a different result." *Litton Industrial*, 755 F.2d at 164, 225 USPQ at 38. As we shall spell out (Parts II, C–E, *infra*), the court below not only failed to recognize the existence of genuine issues of material fact, but also "engaged in faulty legal analysis."

### A. *Infringement—in general*

■ Literal infringement may be found if the accused device falls within the scope of the asserted claims as properly interpreted. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 221 USPQ 475 (Fed.Cir.1984). Thus, the asserted claims must be compared with the product accused of infringement. *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481, 221 USPQ 649, 653 (Fed.Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 306, 83 L.Ed.2d 240 (1984).[3] The infringement inquiry is broken down into two steps; first, the scope of the claims must be ascertained, and then the trier must decide whether the claims cover the accused device. The latter step, which is the ultimate determination of infringement, is a fact issue, and a motion for summary judgment on that issue should be approached with great care by the district court. *See D.M.I., Inc., supra*, 755 F.2d at 1573, 225 USPQ at 238.

■ Construction of a claim, a question of law, is necessary to define the metes and bounds of the protection afforded by the claims. If the language of a claim is not disputed, then the scope of the claim may be construed as a matter of law. *McGill, Inc. v. John Zink Co.*, 736 F.2d 666, 221 USPQ 945 (Fed.Cir.1984), *cert. de-*

nied, — U.S. —, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). But when the meaning of a term in the claim is disputed and extrinsic evidence is necessary to explain that term, then an underlying factual questions arises, and construction of the claim should be left to the trier or jury under appropriate instruction.

### B. *"Means plus function" claims*

As already noted, *supra*, the independent claims in the '744 patent utilize "means plus function" language directed to a desired result (*e.g.*, "means for bracing," "means for maintaining" and "means for causing"). To interpret these functional claims, one must resort to the last paragraph of 35 U.S.C. § 112:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material or acts described in the specification and *equivalents thereof.* [Emphasis added.]

The statute expressly states that the patentee is entitled to a claim covering equivalents as well as the *specified* "structure, material or acts." *See D.M.I., Inc., supra.* This court has recognized that such a "patent claim [is] construed to cover *both* the disclosed structure *and* equivalents thereof." *Radio Steel & Mfg. Co. v. MTD Products, Inc.*, 731 F.2d 840, 848, 221 USPQ 657, 663 (Fed.Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984) (citing *Lockheed Aircraft Corp. v. United States*, 553 F.2d 69, 193 USPQ 449 (Ct.Cl.1977)) (emphasis added). "To interpret 'means plus function' limitations as limited to a particular means set forth in the specification would be to nullify the provision of § 112 requiring that the limitation *shall* be construed to cover the structure described in the specification *and* equivalents thereof." *D.M.I., Inc. v. Deere*

---

**3.** Although the district court did cite *Amstar* for this proposition, it seems that it may have been over-influenced by the comparative appearance of the two devices; it had earlier made the statement that "[t]he Court has visually inspected [the Palumbo and Don-Joy] devices *and that inspection is an integral part of this ruling*" (emphasis added).

& Co., supra, 755 F.2d at 1574, 225 USPQ at 238 (emphasis in original).

 In construing a "means plus function" claim, as also other types of claims, a number of factors may be considered, including the language of the claim, the patent specification, the prosecution history of the patent, other claims in the patent, and expert testimony. Cf. McGill, Inc. v. John Zink Co., 736 F.2d 666, 221 USPQ 945 (Fed.Cir.1984), cert. denied, — U.S. —, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). Once such factors are weighed, the scope of the "means" claim may be determined. Here, appellants have contended (in this court and below) that the independent "means" claims of the '744 patent must be construed to cover a § 112 "equivalent," and that the MDPS is such a § 112 "equivalent." Whether that accused device is a § 112 equivalent of the described embodiment is a question of fact. See D.M.I., Inc. v. Deere & Co., supra; and Lockheed Aircraft Corp. v. United States, 553 F.2d 69, 193 USPQ 449 (Ct.Cl.1977). Accordingly, summary judgment cannot be granted unless there is no genuine factual dispute on that question of claim coverage.

### C. Disputed issues of fact

Significant indication of the scope of Palumbo's "means" claims can be found in the evidence offered by those of ordinary skill in the art. Cf. Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565, 1574, 219 USPQ 1137, 1142 (Fed.Cir.1983) ("Claims are normally construed as they would be by those of ordinary skill in the art"). "An important factor [in the determination of equivalents] is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was." Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950). See also Thomas & Betts v. Litton Systems, Inc., 720 F.2d 1572, 220 USPQ 1 (Fed.Cir.1983), and Lockheed Aircraft Corp. v. United States, 553 F.2d 69, 193 USPQ 449 (Ct.Cl.1977). As the Supreme Court said in Graver Tank:

> A finding of equivalence is a determination of fact. Proof can be made in any form, through testimony of experts or others versed in the technology; by documents, including texts and treatises; and of course, by the disclosures of the prior art. Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence.... Particularly is this so in a field where so much depends upon familiarity with specific scientific problems and principles not usually contained in the general storehouse of knowledge and experience.

339 U.S. at 609–10, 70 S.Ct. at 856–57, 85 at USPQ 330–31.[4] Thus, the use of expert witnesses in the present case would be helpful in ascertaining what one of ordinary skill in the art would consider as interchangeable with the "arms and counterarm" embodiment, and therefore equivalent.

---

4. Although, as we pointed out in D.M.I., Inc. v. Deere & Co., supra, there is a difference between a doctrine-of-equivalents analysis and a literal infringement analysis involving "equivalents" under § 112, Graver Tank concepts of equivalents are relevant in any "equivalents" determination. The fact that Graver Tank preceded the 1952 Patent Act by two years and the last paragraph of § 112 was new, see Reviser's Note, 35 U.S.C. § 112, H.R.Rep. No. 1923, 82d Cong., 2d Sess. 19 (1952), suggests that the underlying principles of equivalents in Graver Tank could be used in a § 112 literal infringement analysis. Accord Hale Fire Pump Co. v. Tokai, 614 F.2d 1278, 205 USPQ 123 (CCPA 1980) (applying the Graver Tank concepts of equivalents in constru-

ing a "means" clause); and Lockheed Aircraft Corp. v. United States, 553 F.2d 69, 193 USPQ 449 (Ct.Cl.1977) (Graver Tank interchangeability test used in interpreting a "means plus function" claim for literal infringement purposes).

Nevertheless, the doctrine of equivalents (which is often asserted when literal infringement is absent) is distinct and can be different from the idea of "equivalents" under § 112; they are not completely identical notions. For one thing, use of an "equivalent" under § 112 can lead to literal infringement (rather than infringement under the doctrine of equivalents). That is what Dr. Palumbo has contended in this case. See infra, p. 976.

Such a disputed factual issue has already surfaced. On deposition, the inventor (Dr. Palumbo), who may be considered versed in the technology, stated that "means for bracing the patella" is the "neoprene sleeve and the superimposed unit" of the MDPS. He testified, further, that the MDPS arrangement applies a resultant force in the medial direction to the patella throughout the complete range of motion. He said that Don-Joy "even states in their literature that it" performs this function. Palumbo also testified that the medial portion of the circular MDPS device is essentially "arms," and the lateral portion is essentially a "counterarm." Then in a declaration on May 8, 1984, he asserted that the knee sleeve interacts with the patellar bracing means to prevent a sliding movement of the bracing means about the knee during the complete physiologic range of flexion. By positioning the two sleeves on the knee, Dr. Palumbo declared, the inner surface of the patellar bracing means is frictionally attached to the outer surface of the inner knee sleeve within which the knee is positioned, thereby accomplishing the function set forth in the claims. Dr. Palumbo concluded that the MDPS device is an equivalent of his "bracing" means, and therefore literally infringes the claims of his '744 patent.

These statements, made by one skilled in the art, constitute a reasonable interpretation of claim coverage sufficient to raise a genuine material issue of fact as to whether the MDPS is a § 112 "equivalent." They are not mere conclusory statements but facts set forth in sufficient detail by a knowledgeable declarant. *See Barmag v. Murata Machinery, Ltd.,* 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed.Cir.1984). All that is required to withstand a summary judgment motion is a showing of a question of material fact sufficient to raise a genuine issue. Here, "[a] study of the record in

this light leads us to believe that inferences contrary to those drawn by the trial court might be permissible." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). The district court thus erred in not finding the existence of a genuine issue of material fact sufficient to call for a trial.

### D. *Prosecution history of the '744 patent*

In construing the independent claims of the '744 patent, the district court considered the prosecution history, but in our view committed a significant legal error[5] in reading that history by finding outright that Palumbo argued before the PTO that Detty did not "work the same way as his arms and counterarm." Nowhere during the prosecution history presented in the record on appeal was it argued explicitly (or implicitly, so far as we can tell) that the "arms and counterarm" of the preferred embodiment were the significant distinguishing feature over Detty or any other reference, or that these elements had no equivalents. What was asserted was that none of the prior art references disclosed a structure capable of adequately bracing the kneecap throughout the complete range of movement. In referring to the Detty patent, the examiner merely found that the Palumbo brace "appeared to track the patella more closely." This seems consistent with Palumbo's point that the important aspect of his invention was that it was capable of bracing the kneecap throughout the complete physiologic range of movement.

At the very least, if ambiguity is thought to surround the prosecution history in this case, that could give rise to a question of fact underlying the legal question of claim construction. In light of the complexity of the proceedings before the examiner, and the need under the facts of this case for a careful interpretation of those proceedings

---

**5.** We rule on the legal errors made by the district court, not only because they require reversal of its grant of summary judgment, but also because those issues undoubtedly will arise at trial, and "(i)f we say nothing ... the district court is likely to adhere to its prior rulings."

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552, 1556, 224 USPQ 259, 268 (Fed.Cir.1984). *See also Lemelson v. TRW, Inc.,* 760 F.2d 1254 (Fed.Cir.1985) (guidance to the district court on matters which may again need to be addressed on remand).

by one of ordinary skill in the art, explanatory testimony could aid the trial court (if it had doubt) in ascertaining the scope of the "means" claim and of "equivalents." *See Lemelson v. TRW, Inc.,* 760 F.2d 1254 (Fed.Cir.1985) (summary judgment reversed in light of extremely unclear prosecution history); and *Black, Sivalls & Bryson, Inc. v. National Tank Co.,* 445 F.2d 922, 171 USPQ 17 (10th Cir.1971) (district court's summary judgment of noninfringement based on a finding that the "file wrapper" made it "clear" that the claims should be limited, reversed and remanded).

### E. Comparison with other claims

 The court below committed a related legal error in reading into the independent claims the limitations of other claims. This court has recognized that "it is improper for courts to read into an independent claim a limitation explicitly set forth in another claim." *Environmental Designs, Ltd. v. Union Oil of Cal.,* 713 F.2d 693, 699, 218 USPQ 865, 871 (Fed.Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984); *see also Kalman v. Kimberly-Clark Corp.,* 713 F.2d 760, 218 USPQ 781 (Fed.Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). Claims 2 through 7 expressly claim the specified embodiment of "arms and counterarm." The district court was aware of these limitations and the above doctrine, citing *"Fromson v. Advance Offset Plate, Inc.,* 720 Fed 2nd 1565, Fifth [sic] Circuit, 1983," but nevertheless held that the means claim should still be limited (apparently on the basis of the court's incorrect understanding of the prosecution history). Particularly in the light of our conclusion on the prosecution history, this was erroneous. "In *Fromson v. Advance Offset Plate, Inc.,* this court cautioned against limiting the claimed invention to preferred embodiments or specific examples in the

---

**6.** Validity of the '744 patent and infringement of the PSU device still remain for trial even under the district court's judgment. *See supra* Part I, D.

**7.** Appellants urge that we can pass on all the Rule 56(d) findings (under *Gillepsie v. U.S. Steel*

specification." *Lemelson v. United States,* 752 F.2d 1538, 1552, 224 USPQ 527, 534 (Fed.Cir.1984). This is especially true when § 112 calls for equivalents.

### III.

### THE DISTRICT COURT'S RULE 56(d) FINDINGS

Appellants likewise ask us to rule on the trial court's six findings under Federal Rule of Civil Procedure 56(d). *See* Part I, D, *supra.* Rule 56(d) indicates clearly that a partial summary judgment relating to facts which are deemed established for trial is not a final judgment, and therefore is not appealable in and of itself.[6] *See* Fed.R. Civ.P. 56(d), Notes of Advisory Committee on 1946 Amendment to Rules. But certain of these findings were plainly intertwined with the district court's final summary judgment, which is properly before us, and to this extent we may pass on them.[7]

In Part II, C–E, we found significant errors in the district court's analysis of the "means" clause and the scope of claim 1 of the '744 patent, and therefore finding (d), construing a "means" clause, should not stand. The same holds true of finding (e), likewise interpreting a "means" clause. Finding (c), holding that the '744 patent is entitled to only a narrow range of equivalents, is defective for the reason that the district court appears to have mistakenly confused § 112 "equivalents" (which of course are relevant to this appeal) with the doctrine of equivalents which comes into play only when literal infringement is not found (and is not yet relevant here). As we have said, Palumbo argued literal infringement and asserted "equivalents" only under § 112. The range of equivalents was raised by the district court *sua sponte.* The "Federal Rules do not contemplate that a court may dispose of a cause by summary judgment, when the ba-

---

*Corp.,* 379 U.S. 148, 152–54, 85 S.Ct. 308, 310–12, 13 L.Ed.2d 199 (1964) ) as "fundamental to further conduct of the case." We do not, however, consider that the two findings ( (a) and (b), *supra*) on which we do not pass fall into that category.

sis for the judgment was not raised by the movant with sufficient precision for the nonmovant to respond." *Cooper v. Ford Motor Co.*, 748 F.2d 677, 680, 223 USPQ 1286, 1288 (Fed.Cir.1984). The same is true when a factual issue supporting the judgment is disposed of under Rule 56(d). This principle is especially important in this instance because the range of equivalents (under the doctrine of equivalents) presents a material issue of fact relating to the nature and closeness of the prior art which normally would be decided at trial. *See Martin v. Barber*, 755 F.2d 1564, 1568, 225 USPQ 233, 235 (Fed.Cir.1985).[8]

## IV.

### SUMMARY

By limiting the '744 patent to its specific embodiment the district court necessarily found that equivalents under 35 U.S.C. § 112 do not exist in this case. That determination rests on a misunderstanding of the prosecution history and of the nature of § 112 "equivalents." Furthermore, appellants offered sufficient evidence to create a genuine factual issue as to those equivalents. Accordingly, appellants are entitled to an opportunity to prove literal infringement at trial by offering evidence that the accused device "which performs the function stated in the claim is the same as or an equivalent of the corresponding structure described in the patentee's specification." *D.M.I., Inc.*, 755 F.2d at 1575, 225 USPQ at 239. We reverse the entry of summary judgment by the district court, and remand for further proceedings in accordance with this opinion.[9]

### REVERSED AND REMANDED.

8. Though we cannot directly consider the correctness of its first two findings, the district court may wish to look at them again because finding (a), *i.e.*, the field of invention is crowded, and finding (b), *i.e.*, the advance of the patented invention is small, appear to be the subsidiary reasons for ultimate finding (c), which we have just rejected as made in error.

9. The district court cited *Teledyne McCormick Selph v. United States*, 558 F.2d 1000, 195 USPQ 261 (Ct.Cl.1977) for the proposition that dependent claims cannot be infringed unless the accused device is also covered by the respective independent claim, and therefore concluded that there was no infringement of the dependent claims. Because we reverse as to the independent claims, we reverse and remand as to the dependent claims as well.