**PERINI AMERICA, INC.**
**Plaintiff–Cross–Appellant,**

v.

**PAPER CONVERTING MACHINE COMPANY, Defendant–Appellant.**

Nos. 87–1150, 87–1170.

United States Court of Appeals, Federal Circuit.

Oct. 22, 1987.

Theodore W. Anderson, Neuman, Williams, Anderson & Olson, Chicago, Ill., argued for plaintiff-cross-appellant. With him on the brief were Noel I. Smith and Vasilios D. Dossas. Also on the brief was James P. Brady, Foley & Lardner, Milwaukee, Wis., of counsel.

Jerome F. Fallon, Tilton, Fallon, Lungmus & Chestnut, Chicago, Ill., argued for defendant-appellant.

Before MARKEY, Chief Judge, BALDWIN, Senior Circuit Judge, and NIES, Circuit Judge.

MARKEY, Chief Judge.

Paper Converting Machine Company ("PCM") appeals from a declaratory judgment of the United States District Court for the Eastern District of Wisconsin (Reynolds, J.), # 82–C–596, that Perini America, Inc. ("Perini") did not infringe PCM's United States Patent Nos. 3,556,907 ('907) and 3,867,225 ('225). Perini cross-appeals from an order denying its request for attorney fees. We affirm.

## I. BACKGROUND

PCM and Perini deal in embosser systems used in fabricating paper towels. Modern kitchen paper towels absorb far more liquid per sheet than did their predecessors, because of increased bulk created when separately embossed webs of paper are joined by glue. The first such towel was marketed by Procter and Gamble Company. It joined two webs at projections ("pegs") formed by an embossing roll, i.e., in a "peg-to-peg" manner.

Procter and Gamble's product and method of making it was disclosed and claimed in the Wells patent, U.S. Patent No. 3,414,-459 (Wells). Wells discloses two embossing rolls rotating synchronously. A glue applicator coacts with one of the rolls to apply adhesive to the pegs of a web while it is still on that roll. The two webs join at a "marrying" nip where the two embossing rolls meet.

"Designing around" the Wells patent, Ernst Nystrand, Vice President of Engineering for PCM, developed a machine for producing paper towels with characteristics similar to those of Procter and Gamble's product. Noting that Wells required carefully registered and synchronized rolls to ensure peg-to-peg alignment, Nystrand adjusted the predetermined rotational position or "phasing" of the rolls and thus

avoided the need for strict precision and synchronization.

In towels produced on the Nystrand machine the webs line up in a peg-to-valley or "nested" configuration. Although the rolls still have to be synchronized to maintain peg-to-valley nesting, less than perfect synchronization is permissible because the peg-to-valley configuration allows more leeway for error without giving up satisfactory bulk and spacing between the towel webs.

### The '907 Patent

In 1969, PCM filed a patent application in Nystrand's name for a "Machine for Producing Laminated Embossed Webs." The original application (Serial No. 793,430) contained machine, method, and product claims, but PCM retained only the machine claims in that application when the examiner required an election.

On January 19, 1971, PCM's '907 issued. Claim 1 reads:

A machine for producing laminated, embossed webs comprising a frame, first and second embossing units mounted on said frame, each unit including an embossing roll having a pattern of projections of about 10 to about 200 per square inch, and a platen roll for coaction with each embossing roll, means for rotating said rolls and for feeding a web for travel on the rolls of each unit to develop two embossed webs, adhesive applying means on said frame for one of said units, a third roll operatively associated with the first unit embossing roll to press both webs against said first unit embossing roll and adhere the two webs together, the first and second unit embossing rolls being oriented relative to each other to position the projections in one web intermediate the projections in the other web as the webs approach said third roll.

### The '225 Patent

PCM's '225 patent contained Nystrand's method claims. During its prosecution the PTO cited Wells and U.S. Patent No. 3,547,-723 to Gresham (Gresham).

The '225 patent issued on February 18, 1975. Claim 1 reads:

A method for producing laminated embossed webs comprising separately embossing two webs each with a pattern of projections of about 10 to about 200 per square inch and a height of about 0.01 to about 0.05 inches, applying adhesive to at least some of the projections of one of said webs while the same is supported on an embossing roll, orienting said webs so that the projections face each other and interlace with each other so as to provide air spacing in the interlacing, and applying a linear laminating pressure by passing said webs through the nip defined by a marrying roll and the embossing roll which provided the projections on said one web to join said webs while said one web has the projections thereon supported and while maintaining the hardness of said marrying roll and the pressure in said nip to prevent distortion of the projections of the other said webs.

## PROCEEDINGS IN THE TRIAL COURT

On May 17, 1982 Perini sought a declaratory judgment that its Double Embossed Random Laminating II (DERL II) machine did not infringe any claim of either the '907 or '225 patent, that the patents were invalid, and that they were unenforceable because of PCM's inequitable conduct before the Patent and Trademark Office (PTO). PCM counterclaimed for infringement of claim 1 of each patent.

A bench trial was held July 17–27, 1984. On December 30, 1986, the trial court entered this judgment:

### IT IS ORDERED AND ADJUDGED

that a declaratory judgment is entered for plaintiff Perini America, Incorporated.

IT IS FURTHER ORDERED AND ADJUDGED that the plaintiff's Double Embossed Random Laminating II embossing/laminating machinery does not infringe the U.S. Patent Nos. 3,556,907 and 3,867,225 owned by defendant Paper Converting Machine Company.

The trial court issued simultaneously with its judgment a Decision and Order

which included a comprehensive 47–page set of 98 Findings of Fact and 26 Conclusions of Law. In that Decision and Order, the court found noninfringement, concluded that Perini had not proven the patents invalid, concluded that Perini had not proven PCM guilty of inequitable conduct, and denied the requests of both parties for attorney fees.

PCM appeals from the judgment. Perini appeals from the order denying its request for attorney fees.[1]

## II. ISSUES

(1) Whether the trial court erred in finding that Perini's DERL II machine did not infringe the claims of either patent.

(2) Whether the trial court abused its discretion in denying Perini's request for attorney fees.

## III. OPINION

### (1) INFRINGEMENT

■ PCM charges the trial court with a litany of errors in interpreting the scope of the patent claims at issue and in finding noninfringement. It is axiomatic, however, that this court does not undertake to retry the entire case on appeal. A trial court's conclusions on the scope of the claims are reviewable as matters of law, but findings on disputed meanings of terms in the claims and on the infringement issue must be shown to have been clearly erroneous. *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 974–75, 226 USPQ 5, 8 (Fed.Cir.1985); *McGill Inc. v. John Zink Co.*, 736 F.2d 666, 671–72, 221 USPQ 944, 948 (Fed.Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984); *see Perkin–Elmer Corp. v. Westinghouse Corp.*, 822 F.2d 1528, 1530–31, 3 USPQ2d 1321, 1323 (Fed. Cir.1987) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct.

1504, 1511, 84 L.Ed.2d 518 (1985): "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

That a claim must be interpreted in a certain way is a conclusion of law. *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed.Cir. 1983). Like all legal conclusions, that conclusion rises out of and rests on a foundation built of established (undisputed or correctly found) facts. Interpretation of a claim, or of its scope, should not be assayed until that foundation is in place. If the meaning of terms in the claim, the specification, other claims, or prosecution history is disputed, that dispute must be resolved as a question of fact before interpretation can begin. Confusion may be caused by the circumstance in which resolution of the question on the meaning of a term or terms dictates the interpretation of the claim, but that is not unusual, legal conclusions being dictated by established facts and not the other way around, and does not change the nature of the meaning-of-terms inquiry from one of fact to one of law. With the meaning of terms in the claims, specification, etc. established, it may still be necessary to interpret the claim, with its now-defined terms, in light of the specification and prosecution history, with their now-defined terms. It is that interpretation based on established facts that constitutes a legal conclusion reviewable as a matter of law.

### (a) Claim Construction

■ Claims are construed by reference to the specification, the prosecution history, other claims, and expert testimony. *McGill*, 736 F.2d at 671–75, 221 USPQ at 948–51. Analyzing the language of claim 1 of the '907 patent and claim 1 of the '225 patent in light of the patents' specifications and extensive prosecution history, the trial

---

1. Perini devotes the major portion of its brief to two issues it says it raises in what it calls its "cross-appeal": Whether the trial court erred in failing to hold the patents invalid under 35 U.S.C. § 103, and unenforceable because of inequitable conduct. Because no judgment was entered on those issues, Perini's effort is not an appeal. Perini's effort must be deemed at most a response to PCM's appeal, setting forth its affirmative defenses which would become material as a possible basis for remand only if we found error in the judgment of noninfringement from which PCM appeals. Because we affirm that judgment, the validity/enforceability issues are moot.

court correctly concluded that those claims require initial registration and synchronous operation of embossing rolls.

### (i) The '907 Patent Claim

Claim 1 of the '907 patent requires orientation of the rolls relative to each other, to position the pegs on one web intermediate those on the other and thus achieve "nesting." The claim broadly covers "means" for rotating the rolls to accomplish that result. The specification discloses one way of achieving orientation, i.e., rotation of the rolls in synchronism, though not necessarily perfect synchronism, by means of gears. Under 35 U.S.C. § 112, the claim limitation must be construed to cover structure that is equivalent to the disclosed gears and, in light of the specification, to be equivalent such structure must be capable of producing substantially synchronous rotation. *See Data Line Corp. v. Micro Technologies, Inc.*, 813 F.2d 1196, 1201–02, 1 USPQ2d 2052, 2055–56 (Fed.Cir.1987); *Palumbo*, 762 F.2d at 975 n. 4, 226 USPQ at 8–9 n. 4.

PCM contends that the trial court erred in limiting the claims to a literal requirement for "gears." PCM's difficulty is that the trial court did not do that. Though the court at one point placed its claim construction analysis under a "doctrine of equivalents" heading, *see Data Line*, 813 F.2d at 1202, 1 USPQ2d at 2055 (equivalents under § 112 should not be confused with doctrine of equivalents), the record reflects that it properly construed the scope of the '907 claim as covering gears and structure equivalent to gears. The court properly looked for structural means that, like the disclosed gears, permit initial registration, rotate the rolls in synchronism, and position the web pegs to achieve nesting as described in the specification and as set forth in different language in the claims, where, for example, "intermediate" and "interlace" correspond to "nesting."

PCM says the trial court erred in comparing the Perini machine to PCM's com-mercial machine and not to the claims. Again, the trial court did not do as PCM alleges. The trial court's reference to PCM's instructional manual served merely as an illustration of the existence of initial registration, not as the basis for the court's claim construction.[2] Nor are the trial court's findings on the meaning of terms in the claim clearly erroneous. To provide a nested arrangement of pegs as claimed by the '907 patent ("the projections in one web intermediate the projections in the other web"), relative orientation of the rolls is required, and that orientation depends upon rotational phasing of the rolls and maintenance of the nested arrangement by synchronization of the rolls' rotation.

PCM argues the semantic not the substantive in saying the trial court construed the claims as requiring perfect synchronism. Again, the court did not do that. As the record makes clear, the trial court's use of "synchronism" related merely to the required maintenance of a nested orientation of the pegs.

### (ii) The '225 Patent

Claim 1 of the '225 patent requires orienting the webs so that the pegs face each other and so interlace ("nest") with each other as to provide air spacing. The specification is identical to that of the '907 patent. The specification and extensive prosecution history of the '225 patent demonstrate the correctness of the trial court's interpretation that a random orientation of the projections, or a crushing or reembossing of the projections on one web, would be the antithesis of the claimed method. In distinguishing Gresham, PCM told the PTO precisely that.

PCM's assertion that the trial court failed to determine the scope of the '225 claim is simply untrue. Finding 84 recites the orientation requirement of claim 1. Findings 85–87 demonstrate consideration of the specification and drawings. The court's extensive review of the prosecution history of the '225 patent, and its consider-

---

**2.** The same flaw is present in PCM's argument that the court erred in considering the way the embossing rolls are made. The discussion may have been unnecessary, but there is no evidence that the trial court relied on the way the rolls are made in any way in construing the claims.

ation of claim scope inherent in findings 90 and 91, all refute PCM's assertion. Those findings fully support the trial court's Conclusion 119, containing an assessment of the scope of the claims in suit.

PCM's complaint that there was no finding on the bulk of the Perini towels is irrelevant. A finding on that subject was unnecessary, the trial court having correctly focused on the randomness and lack of nesting produced by Perini's machine and method.

Noting that the '225 claim relates to orienting webs and the '907 claim relates to oriented rolls, PCM says the trial court imported apparatus limitations (roll-orientation) from the '907 patent in construing the scope of the '225 method claim. The argument is unavailing. The meaning of the terms of claim 1 of the '225 patent was fully disputed before the trial court and its finding on that meaning is reviewable under the clearly erroneous standard. That the trial court noted the result ("nesting") achieved by both apparatus and method does not constitute evidence that it read roll-orientation limitations of the '907 claim into the claim of the '225 patent. PCM has not shown the trial court's finding on the meaning of terms in claim 1 of the '225 patent to have been clearly erroneous.

PCM has shown no error in the trial court's construction of the claims.

### (b) Infringement

■ Infringement is determined by comparing the accused product with the invention set forth in the claim. *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 865, 228 USPQ 90, 92 (Fed.Cir.1985). Infringement is a question of fact, and a trial court's finding on that question can not be reversed unless it is clearly erroneous. *Perkin–Elmer*, 822 F.2d at 1531, 3 USPQ2d at 1323.

The trial court found that Perini's DERL II machine: (1) uses a smooth flat belt and pulley drive that is *incapable* of driving the rolls synchronously to produce nested orientation; (2) accumulates all alignment errors because it has no mechanism for initial registration and lacks a self-regulating timing effect; (3) produced representative samples of paper towelling that show relative positions of the pegs on the two webs to be uncontrolled, random, and subject to continuous shifting; (4) produces a random orientation of pegs on one web which frequently causes them to impinge on, distort, and crush pegs on the other; and (5) produces crushed embossments in isolated "blotches" or areas covering as much as 85% of a towel roll.[3] In light of those findings, the trial court ultimately found that the Perini DERL II machine does not infringe either the '907 or the '225 patent.

■ The findings listed above establish the absence of both literal infringement and infringement under the doctrine of equivalents, for they show that Perini's device and method lack correspondence with specific claim limitations and that they do not perform substantially the same function in substantially the same way to achieve substantially the same result. *See Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950). At the very least, the DERL II machine and method does not accomplish substantially the same result as

---

3. PCM objects to the trial court's use of magnification to reach this finding, citing *Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.*, 796 F.2d 443, 230 USPQ 416 (Fed.Cir.1986). *Bausch & Lomb*, however, does not condemn use of magnification generally. The case merely stands for the proposition that the meaning of patent claims should be ascertained with reference to evidence such as the specification and prosecution history. In *Bausch & Lomb* the trial court erroneously ignored evidence in the specification that "smooth" as used in the claims meant that the eyelids of the contact lens wearer would not be irritated by the surface of the lens. Thus it was error for the court to interpret the term as referring to the topography of the lens itself. PCM's argument here fails because a key component of its claims, as found by the trial court, is the orientation of the pegs of one web in a nested position with the pegs on the second web. The evidence of blotches and crushed pegs produced by the accused machine is material in determining infringement, not in interpreting "intermediate" and "interlace" in the claims about which there was no dispute.

PCM's claimed machine and method. As the trial court found, operation of the DERL II machine results in a product differing materially from the product resulting from operation of the machine and method set forth in the claims. The DERL II product is not uniform, has random pegs that do not nest, and has crushed pegs in isolated "blotches" or areas covering as much as 85% of the towel product. PCM has not shown those findings to have been clearly erroneous.

PCM offers in its briefs and at oral argument a number of arguments based on its view of the evidence and its own interpretations, e.g., that the pyramidal shape of Perini's pegs cause sliding and thus nesting, and that Perini's product is competitive. Upon full consideration of all of PCM's arguments, we conclude that it has not met its appellate burden of showing that the noninfringement finding is clearly erroneous. When the trial court has chosen between two permissible views of the evidence its choice can not be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Perkin–Elmer*, 822 F.2d at 1531, 3 USPQ2d at 1323; *Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1572, 230 USPQ 81, 85 (Fed. Cir.1986), *reh'g granted, modified in part*, 231 USPQ 160, *cert. denied*, —— U.S. ——, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987).

### (2) ATTORNEY FEES

Though bad faith conduct before the court or before the PTO can make a case "exceptional" for purposes of 35 U.S.C. § 285, and thus justify attorney fees under § 285, *Bayer Aktiengesellschaft v. Duphar International Research B.V.*, 738 F.2d 1237, 1242, 222 USPQ 649, 652 (Fed.Cir. 1984), a district court's evaluation of a party's conduct is not easily overturned. *Western Marine Electronics, Inc. v. Furuno Electric Co.*, 764 F.2d 840, 847, 226 USPQ 334, 339 (Fed.Cir.1985).

■ Perini argues at length that the trial court erred when it determined that PCM was not guilty of inequitable conduct. From that premise, Perini argues that: (1) the patents are unenforceable (a question not before us, see note 1 *supra*); and (2) it is entitled to attorney fees.[4] The argument fails.

After reviewing all the evidence, the trial court here found that the undisclosed Small patent No. 3,673,052 and 4584 machine were cumulative to the Wells reference that was cited to the PTO by PCM. The trial court made subsidiary findings that support its determination of nonmateriality and Perini has not shown those findings to have been clearly erroneous.

The conclusion of no inequitable conduct having been upheld, Perini has shown no basis for overturning the trial court's denial of its request for attorney fees, the record having reflected no evidence that Perini established by clear and convincing evidence at trial any facts showing exceptionality. *See Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582, 226 USPQ 821, 824 (Fed.Cir.1985). Perini has not argued, as it could not on this record, that the trial court abused its discretion. The trial court's denial of fees to Perini must be affirmed.

### CONCLUSION

The trial court's declaratory judgment of noninfringement and its order denying attorney fees to Perini are affirmed.

**AFFIRMED.**

---

4. PCM does not appeal from the order denying its request for attorney fees, but merely cites in its Reply brief what it sees as bad faith actions of Perini as reasons for us to affirm the denial of fees to Perini.