26 F.3d 138
 30 U.S.P.Q.2d 1672
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
BALTIMORE THERAPEUTIC EQUIPMENT COMPANY, Plaintiff-Appellant,
v.
LOREDAN BIOMEDICAL, INC., and Malcolm Bond, Defendants-Appellees.
 Nos. 93-1301, 93-1331.
 United States Court of Appeals, Federal Circuit.
 April 12, 1994.
 
 Before RICH, MAYER, and SCHALL, Circuit Judges.
 DECISION
 SCHALL, Circuit Judge.
 
 
 1
 Baltimore Therapeutic Equipment Company ("BTE") appeals from the March 30, 1993, decision and order of the United States District Court for the Eastern District of California, Civil No. S 89-1085-GEB. The district court held that appellees, Loredan Biomedical, Inc., and its founder, Malcolm Bond, (collectively, "Loredan") did not infringe BTE's U.S. Patent No. 4,768,783. Because we discern neither reversible legal error nor any clearly erroneous findings of fact in the district court's decision, we affirm.
 
 DISCUSSION
 
 2
 * BTE is the assignee of U.S. Patent No. 4,768,783 (the " '783 patent"), entitled "Apparatus for the Rehabilitation of Damaged Limbs." The '783 patent incorporates by reference, and partly relies on for priority, commonly-assigned U.S. Patent No. 4,337,050 (the " '050 patent"), entitled "Method and Apparatus for Rehabilitation of Damaged Limbs." Loredan manufactures and sells a device known as a "WorkSET." Each of the claimed and the accused devices is used to simulate the operational characteristics of various tools in rehabilitation therapy. For example, a steering wheel-shaped tool may be attached to the device shaft, and the person undergoing rehabilitation therapy will attempt to rotate the steering wheel. Each of the claimed and accused devices can resist rotation of the tool, and can measure the resultant degree of rotative movement.
 
 
 3
 BTE brought suit against Loredan alleging, inter alia, that Loredan's WorkSET apparatus infringed the '783 patent, either literally or, in the alternative, under the doctrine of equivalents. Following a bench trial, the district court held, inter alia, that Loredan's WorkSET apparatus did not infringe any of the claims in the '783 patent. The sole issue on appeal is whether the district court committed reversible error in holding that Loredan's WorkSET device did not literally infringe claim 6 of the '783 patent.
 
 II
 
 4
 Determining whether a patent is infringed involves a two-step inquiry: (1) interpreting the claims; and (2) comparing the properly interpreted claims to the accused device. Read Corp. v. Portec, Inc., 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992). Claims are construed as a matter of law by the district court, and the construction given the claims is reviewed de novo by this court on appeal. 970 F.2d at 822, 23 USPQ2d at 1432. The comparison of the properly construed claims, the ultimate question of infringement, is a matter of fact, reviewed for clear error by this court in the case of a bench trial. SRI International v. Matsushita Electric Corp., 775 F.2d 1107, 1125, 227 USPQ 577, 589 (Fed.Cir.1985) (in banc); Lemelson v. United States, 752 F.2d 1538, 1547, 224 USPQ 526, 530 (Fed.Cir.1985). BTE, as assignee of the '783 patent, bears the burden of proving infringement by a preponderance of evidence. Mannesmann DeMag Corp. v. Engineered Metal Products, Co., 793 F.2d 1279, 1282, 230 USPQ 45, 46 (Fed.Cir.1986).
 
 
 5
 Under 35 U.S.C. Sec. 112, p 6, a patentee may express one or more elements of a combination
 
 
 6
 [a]s a means ... for performing a specified function without the recital of structure ... in support thereof, and such claim shall be construed to cover the corresponding structure ... described in the specification and equivalents thereof.
 
 
 7
 To determine whether a claim limitation in means-plus-function form is met literally, "[t]he court must compare the accused structure with the disclosed structure, and must find equivalent structure as well as identity of claimed function for that structure." Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (in banc); accord Carroll Touch, Inc. v. Electro Mechanical Systems, Inc., 3 F.3d 404, 409, 27 USPQ2d 1836, 1840 (Fed.Cir.1993) ("[i]n order to meet a means-plus-function limitation, an accused device must (1) perform the identical function recited in the means limitation and (2) perform that function using the structure disclosed in the specification or an equivalent structure."); Valmont Industries, Inc. v. Reinke Mfg. Co., 983 F.2d 1039, 1042, 25 USPQ2d 1451, 1454 (Fed.Cir.1993) ("[f]or a means-plus-function limitation to read on an accused device, the accused device must employ means identical to or the equivalent of the structures ... described in the patent specification[, and] must also perform the identical function as specified in the claims."). The breadth of equivalents accorded to a means-plus-function limitation under 35 U.S.C. Sec. 112, p 6, is determined by reference to the patent specification, the prosecution history, other claims in the patent, expert testimony when applicable, and the language of the asserted claim. King Instrument Corp. v. Otari Corp., 767 F.2d 853, 862, 226 USPQ 402, 408 (Fed.Cir.1985), cert. denied, 475 U.S. 1016 (1986). The issue of equivalence under 35 U.S.C. Sec. 112, p 6 is a question of fact, reviewed by this court in the case of a bench trial under the clearly erroneous standard. Palumbo v. Don-Joy Co., 762 F.2d 969, 975, 226 USPQ 5, 8 (Fed.Cir.1985). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Pennwalt, 833 F.2d at 936, 4 USPQ2d at 1740-41 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 76 USPQ 430, 443 (1948)).
 
 III
 
 8
 As permitted by 35 U.S.C. Sec. 112, p 6, claim 6 of the '783 patent recites three of its four limitations, (a) through (d), in means-plus-function format, as follows:
 
 
 9
 (a) an angularly adjustable shaft mounted for full 360 degree rotation in either direction about a fixed axis;
 
 
 10
 (b) a rotation registering means for measuring the degree of rotation of said shaft;
 
 
 11
 (c) brake means for applying a resistance to said shaft within a range useful for rehabilitation therapy; [and]
 
 
 12
 (d) an accessory coupler means on one end of said shaft for detachably receiving and supporting a corresponding coupler element of a tool simulator accessory....
 
 
 13
 For the purposes of this appeal, Loredan does not dispute that the limitations of 6(a) and 6(d), the angularly adjustable shaft and the accessory coupler means, respectively, are met by a corresponding structure in the accused WorkSET device. Rather, the dispute centers on the presence vel non of the limitations of 6(b) and 6(c), the rotation registering means and the brake means, respectively, in the accused device.
 
 
 14
 BTE concedes that "the '050 patent contains the structure relevant to the interpretation of the 'means-plus-function' clauses at issue in this appeal." (BTE Brief at 3 n. 2). In deciding that the WorkSET device did not meet the limitations of 6(b) and 6(c), the district court relied on the language of the claims and the disclosure in the '050 patent, along with expert testimony regarding the function, structure, and interchangeability of various components of the claimed and accused devices. Although the district court focused its infringement analysis on claim 1 of the '783 patent, a claim which is not at issue in this appeal, the district court expressly applied its findings to claim 6 as well. In doing so, the district court noted that limitation 6(b) is identical to limitation 1(b), whereas limitation 6(c) is similar, but not identical, to limitation 1(c).
 
 
 15
 With respect to limitation 6(b), the rotation registering means, the district court noted that its claimed function is to measure the degree of rotation of the device shaft. The district court determined that the sole disclosed means for performing this function was the "electro-mechanical device consisting of an electrical switch activated by depressing a switch arm," as depicted in figures 4 through 6 of the '050 patent. Looking to the accused device, the district court found that the WorkSET's optical encoder performed the same function as the claimed rotation registering means. However, the district court concluded that the presence of "physical, operational, and structural differences" precluded a finding of structural equivalence between the rotation registering means disclosed in the '050 patent and the WorkSET's optical encoder. Specifically, the district court found the claimed and accused devices to be "physically very different [because the] optical encoder consists of two light emitting diodes and two light sensors, whereas the mechanical switch uses a collar with four protrusions surrounding the shaft." (Opinion at 30). Furthermore, the district court found that Loredan's optical encoder and BTE's mechanical switch "operate on substantially different principles [because (i) the] optical encoder does not measure shaft rotation, but instead measures rotation of the WorkSET's motor, [whereas] the mechanical switch ... measures shaft rotation directly from the shaft collar[; and (ii) the] optical encoder utilizes purely photoelectric properties[, whereas] the mechanical switch ... operates similar to the mechanical opening and closing of a switch...." (Opinion at 30). The district court considered BTE's evidence of interchangeability of these components but did not consider it to compel a finding of infringement. Consequently, the district court concluded that the limitations of 6(b) were not met by the accused device.
 
 
 16
 BTE contends that the district court's conclusion of no structural equivalence between the disclosed rotation registering means and the optical encoder is clearly erroneous in light of the evidence of record. In support of its position BTE sets forth a list of items that it contends "overwhelmingly established the structural equivalency of the optical encoder." (BTE Brief at 25). This list includes (i) alleged admissions by Loredan that optical encoders meet the rotation registering means limitation, (ii) Loredan's contention that an optical encoder was the "best mode" of practicing the invention, (iii) identity of function evidence, (iv) conceded structural similarities, (v) evidence of practical interchangeability, and (vi) art recognition of the optical encoder as an alternative rotation registering means. However, although another trier of fact might have weighed the evidence differently to arrive at the contrary conclusion, we cannot say that the district court's conclusion of no structural equivalence was clearly erroneous. Rather, the district court's analysis demonstrates a logical and reasoned approach consistent with this court's precedent regarding claim interpretation and equivalence under 35 U.S.C. Sec. 112, p 6. A reading of the opinion makes it clear that the district court's decision was based in large part on its finding Loredan's expert witnesses more credible than BTE's expert witnesses. This court has acknowledged that where, as here,
 
 
 17
 a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.
 
 
 18
 State Industries, Inc. v. Mor-Flo Industries, Inc., 948 F.2d 1573, 1577, 20 USPQ2d 1738, 1741 (Fed.Cir.1991) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985)). Consequently, because BTE has not demonstrated that the district court's finding of no structural equivalence was internally inconsistent, we hold that it was not clearly erroneous.
 
 
 19
 With respect to limitation 6(c), the brake means, the district court relied upon its analysis of limitation 1(c) to conclude that the servo motor in the accused WorkSET device was not structurally equivalent to any of the four brake means described in the '050 patent due to significant differences in "physical structure, braking force and operational characteristics." (Opinion at 60). Specifically, the district court concluded that the physical structures of the disclosed and accused devices differed because (i) the "physical structure of the servo motor consists of a rotating radial conductor located between a series of fixed magnets[, whereas] the physical structure of the '783 electric brake ... consists of a rotating disc and brake pads[; and (ii) ] the servo motor uses magnetic fields to generate torque on the shaft, whereas the electric brake of the '783 patent relies on friction between the disc and the fixed pads." Id. Furthermore, the district court found that "the operational characteristics of the servo motor differ greatly from those of the '783 electric brake[, because (i) the] unique design of the servo motor enables the device to both generate torque and control shaft direction, whereas the '783 electric brake can only operate to resist motion[; and (ii) ] the servo motor applies the Lorentz Relation whereas the '783 electric brake applies Coulomb's Friction Law." Id. Accordingly, the district court determined that the brake means limitation of claim 6 was not met by the accused device.
 
 
 20
 Although the district court acknowledged that claim 6 recited a different function for the claimed brake means than that recited in claim 1,[1] the district court believed it unnecessary to decide whether the brake means in limitation 6(c) and the servo motor in the accused device performed the identical function, because it had already determined in its analysis of limitation 1(c) that structural equivalence between the disclosed and accused elements was lacking.
 
 
 21
 BTE argues that the district court's analysis of the equivalence between the disclosed brake means and the WorkSET's servo motor constitutes reversible legal error. Specifically, BTE contends that the district court erred by failing to analyze whether Loredan's use of a servo motor to apply resistance against the shaft was identical to the claimed function in limitation 6(c) of "applying resistance to said shaft within a range useful for rehabilitation therapy." (BTE Brief at 41-42). In support of its position, BTE cites Johnston v. IVAC Corp., 885 F.2d 1574, 1580 (Fed.Cir.1989), as standing for the proposition that "[t]o properly construe [a means-plus-function] claim it is essential that the Court consider the claimed function because the 'means' part of the claim has life and meaning only with reference to the function it performs." (BTE Brief at 38). In essence, BTE is asserting that before a court can inquire as to whether an accused device includes structure that is equivalent to that disclosed in the patent specification as performing the claimed function, the court must first identify the particular function of the claimed means-plus-function limitation. Only then, BTE would argue, can the court properly determine which particular components of the accused device are appropriately compared in answering the structural equivalence inquiry. In response, Loredan argues that this court's past decisions ( e.g., Carroll Touch, 3 F.3d at 409, 27 USPQ2d at 1840) have made clear that "the requirement that the accused structure perform the identical function recited in the claim is a separate requirement from the requirement that the structure of the accused device be the same as or structurally equivalent to the structure disclosed in the specification." (Loredan Brief at 25). Consequently, Loredan argues, the district court did not err in failing first to identify the function recited by limitation 6(c) before conducting the structural equivalence analysis.
 
 
 22
 We find it unnecessary to decide this issue based on the facts of this case. It is true that in construing limitation 6(c), the district court expressly did not consider what significance, if any, the phrase "within a range useful for rehabilitation therapy" had with regard to the claimed function. However, even assuming arguendo that a proper claim construction under 35 U.S.C. Sec. 112, p 6 required the district court first to identify the claimed function of limitation 6(c) in order to ascertain the particular components of the accused device that should be considered in deciding the issue of structural equivalence, the outcome would not have been affected in this case. The district court's failure to first identify the claimed function would constitute reversible error only if such failure had caused the district court to consider non-corresponding structure of the accused device in determining whether the accused device had a structurally equivalent means. No such consideration of non-corresponding structure occurred in this case. Rather, in concluding that structural equivalence was lacking, the district court compared Loredan's servo motor with the various braking devices disclosed in the '050 patent. By BTE's own admission, Loredan's servo motor is the corresponding structure of the accused device that is appropriately considered in determining structural equivalence. (BTE Brief at 42-46). Thus, even if the district court first had expressly identified the function of limitation 6(c), the district court still would have compared Loredan's servo motor with the braking devices disclosed in the '050 patent, just as it did in the present case. Because the same structure was being compared, the outcome of the structural equivalence inquiry would not have changed regardless of the identity of the claimed function. Thus, any error that may have occurred as a result of the district court's failure to identify the claimed function of limitation 6(c) was harmless.
 
 
 23
 Finally, BTE argues that the district court's conclusion of no structural equivalence between the disclosed brake means and the WorkSET's servo motor is clearly erroneous in light of the evidence of record. In support of its position, BTE argues that "the evidence overwhelmingly establishes that [limitation] 6(c) reads literally on the Loredan device" because (i) Loredan's servo motor performs the claimed function; (ii) four specific structural similarities exist between the disclosed brake means and Loredan's servo motor; (iii) evidence of interchangeability exists; (iv) Loredan's experts allegedly failed to deny that the disclosed brake means and Loredan's servo motor are structurally equivalent; and (v) the distinction relied upon by the district court do not, in the abstract, support a conclusion of no structural equivalence. (BTE Brief at 42-46).
 
 
 24
 However, as discussed above with respect to limitation 6(b), although evidence to support a contrary decision may exist, we cannot say that the district court's conclusion of no structural equivalence between the disclosed brake means and the WorkSET's servo motor is clearly erroneous. The district court's decision reflects a logical weighing of the evidence, which included expert testimony credibility determinations. Such an exercise is the unique province of the trial court. As such, it is neither susceptible to, nor appropriate for, appellate second-guessing.
 
 
 25
 RICH, Circuit Judge, concurring.
 
 
 26
 For a variety of reasons on which I need not elaborate in this non-precedential opinion, I agree with the result reached by the trial court in its 84 page opinion and affirmed by the majority. I do not join the majority opinion, however, because of its discussion of the Sec. 112 p 6 issue.
 
 
 27
 Interpretation of Sec. 112 p 6 is, of course, a question of law which we review de novo. The majority opinion appears to me to take it for granted that the patentee must show "structural equivalence" to support a finding of infringement and that this is a requirement of the statute. Perhaps this approach is because that is the way the appellant argued the case. But structural equivalence is not a requirement of the statute.
 
 
 28
 Paragraph six, the third paragraph of 35 U.S.C. Sec. 112 as originally enacted, in its entirety reads (emphasis mine):
 
 
 29
 An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.
 
 
 30
 The word "equivalents" is not qualified in any way. There is no legislative history to restrict its meaning. The phrase "and equivalents thereof" is a broadening expression, making clear that the "means" clause claim limitation is not to be construed as restricted to what is disclosed in the specification. How far beyond what is disclosed a court may expand the meaning of the means clause through deciding what is an equivalent is, as usual, dependent on various factors taken into consideration in construing claims generally such as pioneer status of the invention as a whole, importance of the recited "means" to the invention as a whole, and the like. In any event, it is all part of the mental exercise known as claim construction which is done on a case-by-case basis in accordance with all the circumstances and done as an issue of law by the court. We review what has been done de novo.
 
 
 31
 I can agree with the majority's generalized statement that to meet a means-plus-function limitation an accused device must perform the function named in the means clause "and perform that function using the structure disclosed in the specification or an equivalent structure." (My emphasis.) That is what Sec. 112 p 6 says. But that does not necessarily mean that a structural equivalent of what the specification discloses must be used. The two emphasized expressions sound very similar but they connote very different concepts and should not be confused.
 
 
 32
 To illustrate what I mean by a simple example, take the case of a combination claim which calls for part A and part B and "means for securing parts A and B together in a fixed relationship." The specification discloses, in this hypothetical case, that parts A and B are made of wood and they are fixedly secured together by nails. Nails are commonplace for that purpose and are not a critical part of the invention--in fact, so far as the invention as a whole is concerned it does not matter in the least how parts A and B are secured together, so the claim drafter uses a means-clause for this claim limitation, one of the usual reasons for doing so. Any worker in the art can see that the securing can be achieved equally well or perhaps even better with screws, bolts, or even adhesive. These will all perform the identical specified function and for that purpose they are equivalents, the term used in the statute. But a screw is not the structural equivalent of a nail. Their structures are very different, I believe anyone would agree; to some extent they even function in different ways. The same is true of bolts vs. nails. Adhesive performs the equivalent function and may be an "equivalent" under the statute in the environment of the invention but it surely is not the "structural equivalent" of the nails, or of the bolts or the screws. These examples are far from exhausting the means that can perform the function. One could use dowels, or dowels and glue, or lugs on one piece fitting into holes in the other, or wires, or clamps, and so on without affecting the functioning of the overall combination constituting the invention sought to be protected.
 
 
 33
 Factual situations involving the application of Sec. 112 p 6 are subject to infinite variation. Therefore, the applications of Sec. 112 p 6 are not subject to any general rule or standard interpretation but must be made on a case-by-case basis. Two "means" which may be equivalents in the environment of one combination may not be equivalents in another combination. A nail and a screw may be complete equivalents in one environment and not equivalents in another. Equivalence of their structures, which are clearly different, is not the determining factor but rather how they function in the particular environment of the claimed combination.
 
 
 34
 I do not join the opinion because it seems to me not to recognize or maintain a clear distinction between, but rather to confuse, "equivalent structures" and "structural equivalents," which, as I said at the beginning, must be distinguished. And, I also repeat, the statute, Sec. 112 p 6, requires only that two things be "equivalents" for the purpose at hand, not structural equivalents. And this is so clearly the fact as not to be subject to contravention by loose language in any of our precedents.
 
 
 35
 I also point out that interpretation of Sec. 112 p 6 is not an application of the judge-made doctrine of equivalents. The former is a statutory dictate on the interpretation of "means clauses." The latter is an equitable doctrine which permits disregard of claim limitations to a degree, quite different things. Precedents involving one are not precedents controlling the other.
 
 
 
 [1]
 Limitation 1(c) recites "brake means for applying a constant pre-determined torque resistance to said shaft," whereas limitation 6(c) recites "brake means for applying a resistance to said shaft within a range useful for rehabilitation therapy."