**TEXAS INSTRUMENTS,
INC., Appellant,**

v.

**UNITED STATES INTERNATIONAL
TRADE COMMISSION, Appellee.**

No. 85–2776.

United States Court of Appeals,
Federal Circuit.

May 16, 1988.

Dissenting Opinion on Denial of Rehearing In Banc July 6, 1988.

James F. Davis, Howrey and Simon, Washington, D.C., argued, for appellant. With him on the brief, was Kenneth E. Krosin. Also on the brief, were Melvin Sharp, Richard L. Donaldson and David V. Carlson, Texas Instruments, Inc., Dallas, Tex.

Wayne W. Herrington, Office of the General Counsel, of U.S. Intern. Trade Com'n, Washington, D.C., argued, for appellee. With him on the brief, were Lyn N. Schlitt,

General Counsel and Michael P. Mabile, Asst. General Counsel.

B.R. Pravel, Pravel, Gambrell, Hewitt, Kimbal & Krieger, Houston, Tex., was on the brief for Amicus Curiae, American Intellectual Property Law Association.

Before DAVIS and NEWMAN, Circuit Judges, and COWEN, Senior Circuit Judge.

## ORDER

PAULINE NEWMAN, Circuit Judge.

The parties and the amicus American Intellectual Property Law Association have raised several points in connection with Texas Instruments' petition for rehearing. We deny this petition, affirming the prior decision[1] in all respects; we write to discuss the following points.

### The "Pioneer" Issue

Texas Instruments ("TI") again asserts that because its Patent No. 3,819,921 describes a "pioneer" invention the claims should be given an enhanced breadth of interpretation, such that the extensive technological changes that have occurred since this invention was made should be deemed not only functional equivalents but also structural equivalents in terms of 35 U.S.C. § 112 ¶ 6. The International Trade Commission counters, as before, that the '921 patent is not of "pioneer" caliber. The *amicus* expresses concern about the scope of patent protection in "fast-moving" areas of technology, without, however, giving amical advice on this important policy issue.[2]

The Supreme Court in *Westinghouse v. Boyden Power Brake Co.*, 170 U.S. 537, 562, 18 S.Ct. 707, 718, 42 L.Ed. 1136 (1898), characterized a pioneering invention as "a distinct step in the progress of the art, distinguished from a mere improvement or perfection of what had gone before".

Courts early recognized that patented inventions vary in their technological or industrial significance. Indeed, inventions vary as greatly as human imagination permits.

There is not a discontinuous transition from "mere improvement" to "pioneer". History shows that the rules of law governing infringement determinations are amenable to consistent application despite the variety of contexts that arise. The judicially "liberal" view of both claim interpretation and equivalency accorded a "pioneer" invention, *see Morley Sewing Machine Co. v. Lancaster*, 129 U.S. 263, 9 S.Ct. 299, 32 L.Ed. 715 (1889), is not a manifestation of a different legal standard based on an abstract legal concept denominated "pioneer". Rather, the "liberal" view flows directly from the relative sparseness of prior art in nascent fields of technology.

In the case of the claimed "pocket-size" calculator, we do not share the Commission's denigration of TI's contribution. However, even its "pioneer" status does not change the way infringement is determined. The patentee's disclosure, the prosecution history, and the prior art still provide the background against which the scope of claims is determined. As discussed in our prior opinion and further explained below, the claims fail to encompass the accused devices.

### Literal Infringement

Our prior opinion construed the claims pursuant to 35 U.S.C. § 112 ¶ 6, since all the elements of the claims are in means-plus-function form.[3] The Commission had found that in the accused calculators, though all of the functions of the claimed elements were performed, none was performed by the structures described in the '921 specification or by equivalents of

---

1. *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 805 F.2d 1558, 231 USPQ 833 (Fed.Cir. 1986). Familiarity is assumed with this decision and that of the Commission.

2. TI stated in its brief that "The competitors took licenses even though the licensed devices embody technological changes developed over the years." The Commission found that TI's license agreements include many patents in addition to the '921, and stated that "TI has approximately 150 patents, exclusive of the '921 patent, relating to and covering various aspects of portable calculators." *In re Certain Portable Electronic Calculators*, Inv. No. 337-TA-198, USITC Pub. No. 1732 (July 1985) (Findings of Fact 201-212). The Commission emphasized that TI did not rely on the '921 patent to protect its position in this "fast-moving" field.

3. 35 U.S.C. § 112, ¶ 6 states: An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

those structures.[4] We affirmed, on modified reasoning.

■ TI's petition misstates this court's holding. The court did not hold that "every claim element found corresponding equivalent structure in the accused devices". Rather, the court held that, though every *function* of the claimed combination was performed in the accused devices, the structures performing those functions were not equivalents of the structures disclosed in the patent.

The court reviewed the Commission's findings of non-equivalency of the corresponding structural elements by viewing each element in the context of the total combination of structures in the accused device. The functions of input, electronics, and display, viewed solely as functions, were in the calculator prior art; the patentability of the combination depended on the totality of changes in the structures by which the functions were performed. (Indeed the separate structures described in the '921 patent are individually the subject of patents.) It is the totality of means that achieved the claimed pocket-size calculator, as it is the totality of modified means that constitutes the accused calculators. Thus, the equivalency of each changed means is evaluated in the context of the accused device as a whole.

■ The Commission had analyzed each corresponding structure in the accused devices as if such structure were the only difference between the accused device and the claimed device. That is, each function/means clause was analyzed as if it were a separate patented invention, viewed in isolation. It is a distortion of the accused devices to evaluate the equivalency of each changed means as if *all* the other functions are performed by the original means described in the '921 specification. To do so is to evaluate some theoretical device made up of all but one of the patentee's disclosed structures plus one new structure: a device that does not exist. As we stated in our main opinion, "that is not the situation before us." 805 F.2d at 1569, 231 USPQ at 840. In light of this flawed

methodology, we observed that there *may* not be substantial evidence to support the Commission's findings of non-equivalence. However, we concluded that under the correct legal analysis, substantial evidence *did* support the Commission's determination.

■ Each function in a claim is part of a combination, not a separate invention. In cases such as the one before us in which all functions are performed but multiple means are changed, the equivalency of each changed means is appropriately determined in light of the other structural changes in the combination. As in all cases involving assertions of equivalency, wherein the patentee seeks to apply its claims to structures not disclosed by the patentee, the court is required to exercise judgment. In cases of complex inventions, the judgment must take account of situations where the components of the claimed combination are of varying importance or are changed to varying degrees. This is done by viewing the components in combination.

*The Reverse Doctrine of Equivalents*

■ The *amicus* suggests that the court could apply the so-called "reverse doctrine of equivalents". The "reverse doctrine" is explained in *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608–09, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950) as the "wholesome realism ... where a device is so far changed in principle from the patented article ... but nevertheless falls within the literal words of the claim ... the doctrine may be used to restrict the claim", thereby avoiding infringement. Indeed, it might better be called a doctrine of non-equivalence. Its invocation requires both that (1) there must be apparent literal infringement of the words of the claims; and (2) the accused device must be sufficiently different from that which is patented that despite the apparent literal infringement, the claims are interpreted to negate infringement. *See, e.g., SRI Int'l v. Matsushita Electric Corp.*, 775 F.2d 1107, 1122–23, 227 USPQ 577, 587 (Fed.Cir.1985); *Leesona Corp. v. United States*, 530 F.2d 896, 208 Ct.Cl. 871, 192 USPQ 672 (1976).

4. The input function of claim clause (a) is performed in the accused devices by a subsequently developed scanning matrix system, instead of the conductive strips described in the '921 specification. The electronics functions of clause (b), subclauses (i), (ii), and (iii), are performed in the accused devices by MOS transistors instead of the disclosed bipolar semiconductors, accompanied by changes in the integrated circuit array described in the '921 specification. The display function of clause (c) is performed in the accused devices by the subsequently developed liquid crystal technology, instead of the thermal printer described in the '921 specification.

The reverse doctrine of equivalents is invoked when claims are written more broadly than the disclosure warrants. The purpose of restricting the scope of such claims is not only to avoid a holding of infringement when a court deems it appropriate, but often is to preserve the validity of claims with respect to their original intended scope. See the discussion in Pigott, *Equivalents in Reverse*, 48 J.Pat.Off.Soc'y 291, 292 (1966). None of these aspects is here present. As we have discussed, literal infringement of means-plus-function claims requires both that the same function be performed and that the same or equivalent means be used. The reverse doctrine of equivalents comes into consideration only when literal infringement is apparent. Since the '921 claims are not literally infringed, the reverse doctrine of equivalents does not apply.

Accordingly, IT IS ORDERED THAT:

The petition is denied.

The suggestion for rehearing *in banc* will be considered.

DAVIS, Circuit Judge, concurring in the result, concurring in part, and additional views.

I agree with the result and join all of Judge Newman's opinion except the last portion, headed "The Reverse Doctrine of Equivalents." My view is that both the original opinion in this case (which I joined) and the opinion on rehearing (the greater part of which I have joined) reflect principles comparable to (though distinct from) the reverse doctrine of equivalents. The current case solely involves claims governed by 35 U.S.C. § 112 ¶ 6, which provides that a means-plus-function claim "shall be construed to cover the corresponding structure, material, or acts described in the specification *and equivalents thereof*" (emphasis added). There is a symbiosis between § 112 "equivalents" and the doctrine of equivalents—both spring from the same roots and very often take account of the same factors and considerations. While stressing the distinctiveness of each of the separate doctrines, our opinion in *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 975 n. 4, 226 USPQ 5, 8–9 n. 4 (Fed. Cir.1985), declared that *"Graver Tank* concepts of equivalents are relevant in any 'equivalents' determination" under § 112, and "the underlying principles of equivalents in *Graver Tank* could be used in a § 112 literal infringement analysis." *See also Lockheed Aircraft Corp. v. United*

*States*, 553 F.2d 69, 213 Ct.Cl. 395, 193 USPQ 449 (1977).

Because of this close connection, I have considered it proper to apply here an analogue or parallel of the reverse doctrine of equivalents—though not that doctrine in and of itself. Whether or not there was literal infringement of the means-plus-function claims, Judge Newman is right that "the equivalency of each changed means is evaluated in the context of the accused device as a whole" (J. Newman's opinion at 4); "though every *function* of the claimed combination was performed in the accused devices, the structures performing those functions were not equivalents of the structures disclosed in the patent" (emphasis in original) (*id.* at 4–5); and "[t]aken together these accumulated differences [between the invention described in the patent and the accused device] distinguish the accused calculators from that contemplated in the '921 patent and transcend a fair range of equivalents of the '921 invention." *Texas Instruments v. United States Int'l Trade Comm'n*, 805 F.2d 1558, 1570, 231 USPQ 833, 841 (Fed.Cir.1986).

NIES, Circuit Judge, dissenting from the denial of rehearing in banc.

Appellant and the amicus curiae in this case have expressed concern that the decisions which have been issued by the *Texas Instruments* panel alter the legal standard for determining infringement of a patent claim adopted by this court, in banc, in *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 4 USPQ2d 1737 (Fed.Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1226, 1474, 99 L.Ed.2d 703 (1988).

It is now settled law that each element of a claim is material and essential and, in order to find infringement, the patent owner must show the presence of every element or its substantial equivalent in the accused device. *Pennwalt Corp.*, 833 F.2d at 935, 4 USPQ2d at 1739–40. The *Pennwalt* court rejected the view of a minority of the court that only literal infringement required an element-by-element analysis and that infringement under the doctrine of equivalents could be found under an "invention as a whole" standard, even though an element of the claim was not present, at least by an equivalent, in the accused device or process. That debate has been ended.

The concerns expressed in the briefs here, I believe, are unwarranted under our precedent. A panel decision cannot over-

turn *any* precedential ruling of the court, even of a prior panel, much less that of an in banc court. *See, e.g., Capitol Elec., Inc. v. United States,* 729 F.2d 743, 746 (Fed. Cir.1984) (only court sitting in banc can overrule an earlier panel decision). The *Texas Instruments* panel overruled nothing in *Pennwalt* and does not purport to do so. I support in banc, however, to clarify that, to the extent the original *Texas Instruments* opinion appeared to adopt a different standard on infringement from that adopted in *Pennwalt,* it cannot be so interpreted.

As subsequently explained in the order denying rehearing in *Texas Instruments,* the majority found no equivalency, either under 35 U.S.C. § 112 ¶ 6 or under the doctrine of equivalents, between components of the accused devices and elements required by the claim. Thus, under the standard adopted in *Pennwalt,* infringement was not established. With respect to whether that finding of no equivalence was correct, I express no opinion. I would add, however, that this court has not, in its case law, set out general guidelines with respect to what constitutes an equivalent element either where section 112 para. 6 is involved or where it is not. It appears to be the intent of the *Texas Instruments* opinion to provide such guidance where numerous changes have been made from the disclosed embodiment of the invention and the elements of the claim are expressed in means-plus-function language.

In *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), the Supreme Court gave only these guidelines on determining equivalency of a substituted ingredient or component to one specified in a claim:

In its early development, the doctrine [of equivalents] was usually applied in cases involving devices where there was equivalence in mechanical components. Subsequently, however, the same principles were also applied to compositions, where there was equivalence between chemical ingredients. Today the doctrine is applied to mechanical or chemical equivalents in compositions or devices. See discussions and cases collected in 3 Walker on Patents (Deller's ed. 1937) §§ 489–492; Ellis, Patent Claims (1949) §§ 59–60.

What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect. In determining equivalents, things equal to the same thing may not be equal to each other and, by the same token, things for most purposes different may sometimes be equivalents. Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was. *Id.* at 609, 70 S.Ct. at 856–57.

Thus, in banc would also give the court the opportunity to amplify the standard for determining equivalency between components in an accused device and required elements of a claim.