**Constantine Raymond KRAUS**

v.

**BELL ATLANTIC CORPORATION.**

Civ. A. No. 88–7897.

United States District Court,
E.D. Pennsylvania.

May 17, 1989.

Eugene Chovanes, Bala–Cynwyd, Pa., for plaintiff.

Jon A. Baughman, Philadelphia, Pa., Robert E. LeBlanc, Alexandria, Va., pro hac vice, for defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiff Constantine Raymond Kraus brought a patent infringement action against defendant Bell Atlantic. In his complaint, Kraus alleges that Bell Atlantic infringed his United States Patent No. 3,728,486, entitled "Voicegram Service". In the instant matter, defendant moves for summary judgment on the grounds that there are no genuine issues of material fact and non-infringement is clear as a matter of law. Each party has submitted affidavits, and the Court held oral argument on the motion. For the reasons stated below, defendant's motion is granted.

The Federal Circuit instructs a district court in approaching a motion for summary judgment in an infringement action to proceed " 'with a care proportionate to the likelihood of its being inappropriate.' " *Chemical Engineering Corp. v. Essef Industries, Inc.,* 795 F.2d 1565, 1571 (Fed.Cir. 1986) (quoting *D.M.I., Inc. v. Deere & Co.,* 755 F.2d 1570, 1573 (Fed.Cir.1985)). The court must draw all reasonable inferences in favor of the non-moving party, and the movant must carry its burden of establishing the absence of any genuine material fact. *Chemical Engineering,* 795 F.2d at 1571. "Nonetheless where the movant has also supported its motion with affidavits establishing it is entitled to judgment, Fed. R.Civ.P. 56(e), the non-movant bears the burden of coming forward with specific facts to show that there is a genuine issue for trial." *Id.* General assertions of factual issues, general denials, and conclusory remarks are insufficient to carry the non-movant's burden. *Id.* Although infringement is a question of fact, summary judgment is appropriate in a patent case, as in any other case, where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.

*Townsend Engineering Co. v. Hitec Co., Ltd.,* 829 F.2d 1086, 1089 (Fed.Cir.1987).

We will first outline the basic operations of the two devices at issue. The Kraus patent, entitled "Voicegram Service" is a telephonic telegram service. One who wishes to send a "telegram" uses a sending telephone set to dial the telephone number of a "voicegram service center" ("VSC") and the telephone number of the recipient. The sender then utters his message and the VSC both records it and times it. After measuring the length of the recording, the VSC delivers the recorded voicegram through an automatic call unit and measures the duration of the delivery. If the delivery does not succeed on the first try because the receiving set is engaged or does not answer, the VSC, at predetermined intervals, automatically repeats the effort to contact the recipient. The telegram sender is billed for this service based on the length of the recording and the delivery time.

The message services which defendant has implemented are known as Answer Call ("AC"), Voice Mail ("VM"), and Message Storage Service ("MSS"). Answer Call is a system resembling the ordinary answering machine. It provides an "intercept" service that is actuated when a caller is unable to reach the intended telephone set because the line is engaged or no one answers the phone. When this happens, the call is intercepted and connected to the host storage computer at the telephone central office. The host computer then invites the caller to leave a message in the recipient's "mail box." The next time the subscriber uses the telephone that was busy or unanswered, he hears a particular tone. This notifies him that he has a message, and by dialing a code from any telephone, he can access his mailbox and listen to the message or messages. Bell Atlantic charges the Answer Call subscriber, not the message sender, a flat monthly fee for the service.

The second system, Voice Mail, is the business or industrial version of Answer Call, providing basically the same service but at a heightened level of sophistication.

184

The third system, the Message Storage Service, provides telephone reports of weather, sports, or other information. Interested parties can call and obtain prerecorded reports, and through the push of a telephone button, obtain more specific information by entering the system's subcompartments. In all three systems, any telephone set can act as an originating or calling set. As contemplated by the Kraus patent, there are no receiving sets and no delivery.

■ Determination of patent infringement involves two steps: (1) the court must interpret or construe the asserted patent claims; and (2) the court must determine whether the claims encompass the defendant's accused device. *Mannesmann Demag Corp. v. Engineered Metal Products Co., Inc.*, 793 F.2d 1279, 1282 (Fed.Cir. 1986). The interpretation or construction of claims is an isssue of law, and the question whether the claims encompass the accused device is a question of fact. *Id; Vieau v. Japax, Inc.*, 823 F.2d 1510, 1515 (Fed.Cir.1987). Ultimately, to establish infringement, the plaintiff must show either literal infringement or infringement under the doctrine of equivalents. Literal infringement requires that the accused apparatus embody every element of the plaintiff's claim. *Townsend Engineering*, 829 F.2d at 1090. To determine whether a claim limitation is met literally, "the court must compare the accused structure with the disclosed structure, and must find equivalent structure as well as identity of claimed function for that structure." *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934 (Fed.Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988).

■ Defendant argues that each of the claims of the plaintiff's patent contains several limitations which are not embodied in any apparatus or method of the defendant. Claim 18 of the Kraus patent includes the following limitations which do not appear in the defendant's Answer Call and Voice Mail devices: a receiving telephone set, a method of delivering a voicegram, a specific and multi-faceted billing system, a send-

ing circuit for connecting the sending set to the service center, and a receiving circuit. (Defendant's Messenheimer Exhibit 1). Similarly, Kraus Claims 1 and 24 recite a system of signal pulses to interconnect the sending set to the sending service center, an analog signal, a first time length, a system of signal pulses to connect with the receiving set, a delivery of a voicegram, and various measurements of lengths of recordings for billing. (Defendant's Messenheimer Exhibits 3, 4). Again, these claim limitations are not literally readable on the defendant's accused Answer Call and Voice Mail systems. The same limitations in Kraus Claims 1, 18, and 24, outlined *supra*, are also not readable on the Message Storage Service. (Defendant's Messenheimer Exhibits 5, 6, 7).

The affidavit of Donald Messenheimer, an experienced patent attorney, supports defendant's position. With regard to Kraus Claim 18, Messenheimer correctly points out that (1) the Answer Call and Voice Mail systems provide no method of delivering a voicegram; (2) the AC and VM system do not involve any receiving sets, as all telephone sets are originators or callers; (3) the AC and VM systems do not compute billing in the same manner as the Kraus patent; (4) the AC and VM systems do not store messages in a host computer in a sending circuit preselected by the sending set for connecting the sending set to a service center, but instead intercept calls and connect them to the central office only if the line is busy or there is no answer; (5) the AC and VM systems do not involve measuring message lengths; (6) the AC and VM systems do not deliver a message from the service center to a receiving set in a receiving circuit preselected by the sending set. Instead, the subscriber calls on a line or circuit of his own choosing if he desires to gain access to his messages. (Messenheimer Affidavit at ¶¶ 17–19).

With regard to Kraus Claim 1, which is almost identical to Kraus Claim 24, Messenheimer explains that (1) the AC and VM apparatus are not responsive to a predetermined number of signal pulses originating at a sending set, but instead the Bell de-

vices intercept calls; (2) the AC and VM apparatus involves no recording as an analog signal in the service center; (3) the AC and VM apparatus does not interconnect all the parts of the system after completion of the voicegram recording, but instead the AC or VM subscriber calls into the central office if he desires to receive his message; (4) the AC and VM apparatus do not involve a receiving set, as all sets are originating or calling sets; (5) in the AC and VM systems there are no charges to the calling sets and no recording of recording lengths.

These differences clearly establish that neither the AC, VM, nor the MSS systems literally infringe on the Kraus patent. Plaintiff has not supported his motion with and any evidence that specifically contradicts defendant's position, and plaintiff has offered nothing additional at oral argument to bolster his position. Plaintiff virtually concedes that there is no literal infringement. We must now address the question whether under doctrine of equivalents, defendant infringed upon the Kraus patent.

■ The doctrine of equivalents requires a finding of infringement if an accused device performs substantially the same function, in substantially the same way, to obtain substantially the same result as the claimed invention. *Graver Tank & Manufacturing Co., Inc. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); *Pennwalt*, 833 F.2d at 934. We must determine equivalency in the context of the patent, the prior art, and the particular circumstances of this case. *Graver Tank*, 339 U.S. at 609, 70 S.Ct. at 856. A finding of equivalence is a determination of fact. *Id.* The trier of fact must balance the competing public policies of avoiding a "fraud on the patent", *id.* at 608, 70 S.Ct. at 856, and the necessity that the public know with reasonable certainty the scope of the patent. *Id.* at 607, 70 S.Ct. at 855. In order to prove infringement, the plaintiff must show the presence of every element or its substantial equivalent in the

accused device. *Pennwalt*, 833 F.2d at 935. To qualify as a substantial equivalent, "the element substituted in the accused device for the element set forth in the claim must not be such as would substantially change the way in which the function of the claimed invention is performed." *Id.*

Under the doctrine of equivalents, a court must interpret the scope of plaintiff's claims more liberally if the patent can be considered a "pioneer" patent. A pioneer invention is a "distinct step in the progress of the art, distinguished from a mere improvement or perfection of what had gone before." *Westinghouse v. Boyden Power Brake Co.*, 170 U.S. 537, 562, 18 S.Ct. 707, 718, 42 L.Ed. 1136 (1898). The concept of the "pioneer" patent reflects a judicial appreciation that a "broad breakthrough invention merits a broader scope of equivalents than does a narrow improvement in a crowded technology." *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978, 987 (Fed.Cir.1989). The liberal approach to the pioneer patent flows not from the abstract concept, "pioneer," but simply from the relative sparseness of prior art in undeveloped fields of technology. *Texas Instruments v. U.S. International Trade Commission*, 846 F.2d 1369, 1370 (Fed.Cir. 1988). The wide range of technological development between a pioneer invention and a modest improvement permits various gradations in the scope of equivalency. *Sun Studs*, at 987. The place of a particular invention in this continuum is a factual issue which depends on all the circumstances. *Id.* at 988. In the instant matter, it is clear that plaintiff's patent arose in a crowded art, and thus can not be considered a pioneer patent. The Riesz and Dunning patents, discussed *infra*, are similar message sending systems that were patented many years before the Kraus device. However, in deciding the question of equivalency, whether we apply the most liberal standard or the most restrictive, we still reach the same conclusion, namely that defendant did not infringe upon plaintiff's patent.

The evidence in defendant's affidavits of

Messenheimer, Porter [1], and Farris [2], establishes that the AC and VM methods and apparatus differ from the Kraus patent in their function, their method of operation, and their result. Generally, the Kraus system allows one to send a voice telegram while the AC and VM systems intercept calls to engaged or unattended telephones, much like an ordinary telephone answering machine. The MSS system is even less similar to the Kraus patent, as it provides informational reports to those who call into the service. Specifically, defendant's affidavits describe several detailed differences between the systems:

(1) The AC, VM and MSS systems do not provide for delivering a voicegram.

(2) The AC, VM, and MSS systems do not involve receiving telephone sets. Because all telephone sets are originators or senders, they do not perform the receiving set function.

(3) The AC, VM, and MSS systems do not compute charges to sending sets. In the AC and VM systems, there is no charge for the sending set. In the MSS system, the subscriber is charged a flat fee for his storage use.

(4) The AC, VM, and MSS systems neither compute billing based on lengths of recording, delivery, or retrieval, nor do they measure such lengths.

(5) The AC and VM systems do not store messages in a host computer preselected by the sending set. Instead they intercept calls and connect to the host computer when a busy signal or no answer activates the central office switch. The MSS system does not deliver a message from the service center to a receiving set. Information seekers access the service of their own choosing.

(6) The AC and VM systems do not transfer messages from the service center to a receiving set in a receiving circuit preselected by a sending set. Instead, the AC or VM subscriber calls in if he desires to access his calls, and he calls on a line or circuit of his own choosing.

Plaintiff's response to defendant's position consists of vague and conclusory statements and a general plea for his "day in court." While we do not grant summary judgment lightly, "the mere allegation of infringement, either literal or by equivalents, does not raise issues precluding summary judgment." *Chemical Engineering,* 795 F.2d at 1569 n. 5. Plaintiff specifically contests defendant's position with regard to only two of the elements. The Federal Circuit has established that " 'each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device.' " *Pennwalt,* 833 F.2d at 935 (quoting *Lemelson v. United States,* 752 F.2d 1538, 1551 (Fed.Cir. 1985). The elements which plaintiff does not address, standing alone, establish that defendant did not infringe upon the Kraus patent, and plaintiff's efforts to find equivalency in two of the elements are unpersuasive.

Plaintiff claims that the billing systems are substantially the same, and supports that position with the general and unsubstantiated conclusion of Kraus himself: "I consider the way Bell charges to be the equivalent of what my patent shows, and within what my patent covers." (Kraus Affidavit ¶ 4). We find the billing systems significantly distinctive. The Bell systems do not measure recording or delivery times, and they do not bill the sender. The subscriber is billed a flat fee. Plaintiff also asserts that the step of requiring the called party to dial the computer for its messages does not substantially change the Kraus system. We find otherwise. A system which allows one to send unsolicited messages to another at any time is a very different system from one which permits a person who does not answer his phone to access messages if and when he wants to.

---

1. Robin A. Porter is a Bell Atlantic engineer in the area of specialist technology development.

2. Robert D. Farris is a Bell Atlantic staff specialist who investigates and recommends new products for use in providing "enhanced services" such as messaging services.

The Bell systems significantly change the operation of the message service.

Plaintiff could also argue that the Kraus Voicegram may be used after a caller gets a busy signal or no answer, and thus that it is substantially similar to the AC system. However, unlike the AC user, the caller would have to hang up and place a second phone call to the voicegram service center. Once the second call was made, the system would still function in a substantially different way. Thus, although in a broad sense, the function and result could be similar (providing someone with a recorded message), the ways in which that result is obtained are entirely distinct. The message travels through different channels and the billing procedures are completely dissimilar.

All the differences defendant cited make it clear that the Kraus patent and the Bell systems do not perform substantially the same function in substantially the same way to obtain substantially the same result. Defendant has met its burden of demonstrating the lack of any genuine issue of material fact, and plaintiff has failed to come forward with specific facts that show there is a genuine issue for trial. *See generally, Spectra Corp. v. Lutz,* 839 F.2d 1579 (Fed.Cir.1988); *George v. Honda Motor Co., Ltd.,* 802 F.2d 432 (Fed.Cir.1986); *Molinaro v. Fannon/Courier Corp.,* 745 F.2d 651 (Fed.Cir.1984).

 Even if plaintiff could show a genuine issue of material fact on infringement under the doctrine of equivalents, the prosecution history of his claim would estop him from asserting equivalence. The doctrine of prosecution history estoppel is an equitable device for determining the permissible scope of patent claims. *Mannesmann,* 793 F.2d at 1284. This doctrine bars a plaintiff from construing his claims in a way that would revive subject matter that he surrendered during his prosecution of the patent. Thus, the doctrine "prevents a patentee from enforcing its claims against otherwise legally equivalent structures if those structures were excluded by claim limitations added in order to avoid prior art." *Id. See also Pennwalt,* 833 F.2d at 934 n. 1.

In prosecuting Kraus Claim 18, the Patent Examiner rejected that claim as unpatentable over prior art. In response, Kraus substituted a new application (Application Claim 21, herein referred to as Kraus Claim 18) which included limitations he had not previously placed in that claim. In arguing for the patentability of the new claim, Kraus quoted and underlined certain language in the limitations to highlight the distinctions between his patent and the prior art. (*See* Messenheimer Exhibit 2). Thus, Kraus added new language to Claim 18 to overcome the Examiner's prior art rejection:

(1) The recording circuit from the sending telephone set to the service center must be on a "sending circuit preselected by said sending set."

(2) This preselected sending circuit is connected "at a recording starting time and [interrupted] at a recording terminating time to determine a voicegram recording time length."

(3) The delivery from the sending circuit to the receiving set must occur "in a receiving circuit preselected by said sending set for connecting said service center to said receiving set."

(4) The connection of the receiving circuit preselected by the sending set is connected "at a delivery starting time and [interrupted] at a delivery terminating time to determine a reproduction voicegram delivery time length as the difference between said delivery starting and delivery terminating times."

(5) Producing concomitantly with "said respective voicegram recording and reproduction voicegram delivery time lengths information including ... [information] for computing a charge to said sending set of the cost of said voicegram recording and said reproduction voicegram delivery." (Messenheimer Affidavit at ¶ 28); (Messenheimer Exhibit 2).

Similar changes were made with respect to Kraus Claims 1 and 24. (*See* Messenheimer Affidavit at ¶ 38 and 45). Under the doctrine of prosecution history estoppel, Kraus can not invoke the doctrine of equivalents to resurrect the unamended claims he relinquished to successfully pros-

ecute his patent. *See Diversitech Corp. v. Century Steps, Inc.,* 850 F.2d 675, 681 (Fed.Cir.1988); *Builders Concrete v. Bremerton Concrete Products,* 757 F.2d 255, 260 (Fed.Cir.1985). Thus, Kraus is estopped from asserting that the billing systems of the patents at issue are not significantly distinct. Although it was not made of record in the patent office prosecution of the Kraus patent, Riesz U.S. Patent No. 2,998,489 (Defendant's Exhibit 11) illustrates the type of prior art Kraus had to overcome.[3] The Riesz patent is a message delivery system which is originated by the calling party and whose object is to deliver a message at any time. Uncontradicted testimony in the Porter and Farris affidavits establishes that if Kraus Claim 18 is construed to render unessential the charging information production or computation features recited in Krause Claim 18, then Kraus Claim 18 would be invalid as reading on the prior art. (*See* Messenheimer Affidavit at ¶ 71–75). In his deposition, Kraus admitted that his charging system was an "integral part of the patent" and was "essential." (Kraus Deposition at 24). Especially after having admitted to the significance of the change, Kraus can not extend the doctrine of equivalents to cover a broad claim that he was previously compelled to relinquish. The same analysis applies to Kraus Claims 1 and 24. (*See* Messenheimer Affidavit at ¶ 76–83).

Neither plaintiff's brief nor his oral argument responded to defendant's estoppel argument. We find no genuine issue of material fact precluding our granting summary judgment on the ground that the prosecution history of the patent estops plaintiff from proving infringement.

In conclusion, the evidence clearly establishes that defendant did not infringe upon plaintiff's patent. Defendant has shown that it neither literally infringed upon the Kraus patent nor that it infringed under the doctrine of equivalents. Furthermore, defendant has shown that even if the devices were equivalent, plaintiff is estopped from claiming infringement. Plaintiff has not raised any genuine issue of material fact precluding our granting summary judgment. Thus, for the all the reasons adduced above, defendant's motion for summary judgment is granted.

---

**3.** We also note that plaintiff had to overcome the Dunning U.S. Patent No. 3,111,561, an intercept system similar to defendant's AC system.

Because of our analysis of the Riesz patent, we need not address the specific claim limitations plaintiff instituted because of that prior art.